UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
TRUSTEES of the MASON TENDERS DISTRICT    :
COUNCIL WELFARE FUND, PENSION FUND,       :
ANNUITY FUND and TRAINING PROGRAM FUND    :
and MASON TENDERS DISTRICT COUNCIL OF     :
GREATER NEW YORK, by its Business         :   04 CIV. 3051 (DLC)
Manager, Anthony Silveri,                 :
                                          :   OPINION & ORDER
                    Plaintiffs,           :
                                          :
           -v-                            :
                                          :
MULTI RECYCLING CORP., MULTI RECYCLING    :
CORP., d/b/a MULTI RECYCLING INC., and    :
MRI DISMANTLERS, INC.,                    :
                                          :
                    Defendants.           :
-----------------------------------------X

Appearances:

For Plaintiffs:

Sally Schneider, Esq.
Proskauer Rose LLP
1585 Broadway
New York, New York 10036

For Defendants:

Steven B. Horowitz, Esq.
Roth Horowitz, LLC
150 Morris Avenue, Suite 206
Springfield, New Jersey 07081

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/15/05

DENISE COTE, District Judge:

  Three employee benefit funds and a labor union bring suit against two corporations for unpaid fringe benefit contributions, dues checkoffs and PAC contributions under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., and the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 152 et seq.. A bench trial was conducted following the standard procedures outlined in this Court's Individual

Practices. Based on the record presented by the parties, and in accordance with Rule 52 of the Federal Rules of Civil Procedure, Fed R. Civ. P. 52(a), the following constitutes this Court's findings of facts and conclusions of law.

Procedural History

The plaintiffs in this action are Mason Tenders District Council of Greater New York ("Mason Tenders") and Trustees of the Mason Tenders District Council Welfare Fund, Pension Fund, Annuity Fund and Training Program Fund (collectively the "Funds"). The defendants are Multi Recycling Corporation ("Multi") and MRI Dismantlers Inc. ("MRI"). The complaint was filed on April 21, 2004. Discovery concluded on March 28, 2005. On May 23, 2005, a Scheduling Order directed that a Joint Pretrial Order was due on August 19, 2005, and the case was placed on the September 2005 trial ready calender ("May 23 Order"). The May 23 Order explained that the trial would be conducted in conformity with the Individual Practices of this Court in civil bench trials: the parties would submit the direct testimony of their witnesses by affidavit as well as their documentary evidence in advance of trial. Neither party objected to the use of this procedure.

By letters dated August 18, 2005 and September 21, 2005, counsel for defendant Multi requested extensions in filing the Joint Pretrial Order and adjournments in the scheduled trial date based on Multi's intent to file for bankruptcy protection. The

2

requests were granted by memo endorsement. The memo endorsement on the September 21, 2005 letter stated that there would be no further extensions and the case was placed on the December trial ready calender; the Pretrial Order and its attendant documents were due November 4, 2005. On November 3, 2005, defendant MRI filed a petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York.

By memo endorsement dated November 9, 2005, the parties were ordered to separately submit Pretrial Orders and accompanying materials by November 17, 2005. On November 18, 2005, defendants' counsel sent a letter to the Court explaining that Multi, the non-bankrupt defendant, had instructed counsel not to file a Pretrial Order or to appear in court for purposes of defending the matter.

Plaintiffs submitted a Pretrial Order, as well as Proposed Findings of Fact and Conclusions of Law, affidavits and exhibits on November 17, 2005. The four affidavits the plaintiffs submitted as their direct testimony were from Dominick Giammona ("Giammona"), the Manager of the Contributions & Delinquency Department of the Funds, Joseph Bianco ("Bianco"), a field representative of the Mason Tenders, George Rush ("Rush"), a partner in the accounting firm of Salibello & Broder LLP ("S&B"), and William Austin ("Austin"), an audit supervisor in the accounting firm of Schultheis & Panettieri, LLP ("S&P"). The defendants did not make any submissions. In the May 23 Order,

3

parties had been instructed to submit a list of all affiants they intended to cross-examine at trial within three days of submitting the Pretrial Order. The defendants did not submit a letter giving notice of the affiants they intended to cross-examine. On December 5, 2005, an Order was issued stating that, having failed to receive any affidavits or exhibits from defendants or any indication that they intended to cross-examine plaintiffs' affiants, the plaintiffs' submissions would constitute the entire factual record for the case. The trial proceeded on the submitted record.

## Findings of Fact

Plaintiff Mason Tenders is a union that represents employees in the building and construction industry. Mason Tenders is the representative of its constituent locals, and each local is a labor union that operates within the City of New York. The Funds are jointly-administered, multiemployer, labor-management trust funds established and maintained pursuant to various collective bargaining agreements and trust agreements.

Defendant Multi performs interior demolition work in New York City and is a member of the Interior Demolition Contractors Association ("IDCA"). The IDCA is an employer association that acts as a bargaining agent for its member-employers for the purpose of collective bargaining with Mason Tenders. The IDCA has negotiated and executed collective bargaining agreements with Mason Tenders covering the following periods: September 1, 1996

through June 30, 2000, July 1, 2000 through June 30, 2004, and July 1, 2004 through June 30, 2009 (collectively the "Collective Bargaining Agreements"). As a member of the IDCA, Multi is bound by those agreements.

The Collective Bargaining Agreements are substantively identical on all issues relating to this litigation. The following provisions of the agreement are relevant to the plaintiffs' claims:

- For all hours worked by employees covered by the agreements within the jurisdiction of the Mason Tenders, the employer must pay fringe benefits to the Mason Tenders Funds and remit to the Union dues checkoffs and PAC contributions deducted from the wages of all employees who authorize the deductions.
- If an employer or its owner or principal forms or acquires another company performing covered work, then the agreement covers the other company. In addition, the employer and the other company are jointly and severally liable for each other's obligations under the agreement.
- Employers must permit and cooperate in the conduct of audits for the purpose of ascertaining if all contractually required fringe benefit contributions, dues checkoffs, and PAC contributions have been paid.
- Employers are obligated to pay the costs of the audits if they are substantially delinquent in the payment of

required fringe benefit contributions. Substantially delinquent is defined as any delinquency in payment in excess of 10% of the fringe benefit contributions paid to the Funds during the period covered by the audit.

In 2003, Multi formed defendant MRI, which started performing work covered by the Collective Bargaining Agreements and issuing paychecks from MRI to union workers. In April 2003, the existence of MRI came to the attention of Bianco, whose responsibilities as a field representative of Mason Tenders included the maintenance of the union's collective bargaining agreements. Bianco sent an affiliation letter ("Affiliation Letter"), dated May 6, 2003, to Multi's owner, Yolanda Burgan ("Burgan"). The Affiliation Letter confirmed that MRI was a related company of Multi, that MRI was performing work within the Union's jurisdiction, that MRI was bound by Multi's collective bargaining agreements, and that MRI and Multi were a single employer and thus jointly and severally liable for each other's obligations to the Union. Burgan signed a copy of the letter and returned it to Mason Tenders.

S&B performed a payroll compliance audit on Multi's books and records covering the period April 29, 2000 through March 23, 2001 ("2000-2001 Audit"). The audit initially determined that there was a fringe benefit delinquency of $32,056.64. The amount of fringe benefits due on the audit was later adjusted downward by $1,507.66 based on documents submitted by Multi after the initial audit. A number of adjustments to the 2000-2001 Audit

6

requested by Multi were not given because S&B did not feel that the documentation supported the request. About the time S&B completed its audit, Multi submitted a payment for fringe benefit contributions, dues checkoffs and PAC contributions owed for some of the work performed in March 2001 that had been included in the 2000-2001 Audit. Mason Tenders did not amend the audit but it did credit the payment against the audited delinquency. After the two adjustments, the amount of fringe benefit payments left due for the period covered by the 2000-2001 Audit is $27,569.83. The cost of the 2000-2001 Audit was $2,134.33. Based on the information generated in the 2000-2001 Audit, the documentation provided by Multi for the adjustment to the audit, and the Union's records of payments, Multi failed to remit dues checkoffs and PAC contributions in the amount of $3,788.40 for April 29, 2000 through March 23, 2001, the period covered by the 2000-2001 Audit.

S&B also conducted an audit of Multi's books and records for the period from March 24, 2001 through October 31, 2002 ("2001-2002 Audit"). The initial audit showed a fringe benefit delinquency of $130,106.62. The initial fringe benefit delinquency was later adjusted downward by $34,746.24 to reflect documentation submitted by Multi after the audit and by $10,486.12 to reflect payments by Multi after the audit was complete, resulting in a delinquency of $84,874.26. As had been the case with the previous audit, a number of adjustments to the 2001-2002 Audit requested by Multi were not given by S&P because

7

the documentation provided did not support the request. The cost of the 2001-2002 Audit was $3,034.00. Based upon the information generated by the 2001-2002 Audit, the adjustments to that audit, and the Union's records of payments, Multi failed to remit dues checkoffs and PAC contributions in the amount of $10,209.12 for March 24, 2001 through October 31, 2002, the period covered by the 2001-2002 Audit.

An audit of Multi's books and records from November 1, 2002 through December 31, 2003 and of MRI's books and records from February 1, 2003 through September 30, 2004 ("2002-2004 Audit") was conducted by conducted by S&P. The audit revealed fringe benefit delinquencies of $26,489.47 from Multi and $32,945.04 from MRI. It also revealed dues checkoffs and PAC contribution delinquencies of $2,350.80 for Multi and $3,304.80 for MRI. The amounts owed have subsequently been adjusted to reflect additional payments from MRI discovered by the Mason Tenders after the audit was complete. After crediting those payments MRI owes $28,191.39 in delinquent fringe benefit contributions and $3,058.45 for dues checkoffs and PAC contributions for the period covered by the 2002-2004 Audit. The cost of the 2002-2004 Audit was $5,825.50.

The Funds claim a total of $167,151.95 for delinquent fringe benefit contributions by Multi and MRI. They claim prejudgment interest on the delinquent contributions of $33,250.32 based on the interest rate set by 26 U.S.C. § 6621. In addition, they claim $10,993.83 for the costs of the 2000-2001, 2001-2002, and

2002-2004 Audits.

Mason Tenders claims $19,406.77 for dues checkoffs and PAC contributions owed by Multi and MRI. In addition, it claims prejudgment interest on those payments, calculated at the New York statutory rate of 9 percent per annum, totaling $6,660.64.

The plaintiffs do not make any claims against defendant MRI because of the automatic stay triggered by its bankruptcy filing under 11 U.S.C. § 362.

## Conclusions of Law

Multi is a member of the IDCA and is bound to make payments to the plaintiffs by the terms of the Collective Bargaining Agreements. Multi is also joint and severally liable for all of MRI's obligations under the terms of the agreements. The Funds are multiemployer benefit plans for the purposes of ERISA. 29 U.S.C. § 1002(37). Multi is an employer for the purposes of ERISA. Id. at § 1002(5). The Funds' claims for fringe benefits deficiencies are covered by Section 515 of ERISA as Multi is an "employer who is obligated to make contributions to a multiemployer plan." Id. at § 1145. Because Mason Tenders is a labor organization within the meaning of Section 301 its claims for unpaid dues checkoffs and PAC contributions are governed by the LMRA. Id. at § 185.

Pursuant to the terms of the Collective Bargaining Agreements and Section 515 of ERISA, Multi is liable to the plaintiff Funds for all unpaid fringe benefit contributions.

9

Plaintiffs have presented uncontroverted evidence that defendants have not fulfilled their obligations to pay fringe benefits to the Funds under the Collective Bargaining Agreements. By the terms of the Affiliation Letter, Multi is jointly and severally liable for all unpaid fringe benefits contributions owed by MRI to the Funds.

Multi is liable, under the Collective Bargaining Agreements, to plaintiff Mason Tenders for all unpaid dues checkoffs and PAC contributions, as well as jointly and severally liable for MRI's unpaid dues checkoffs and PAC contributions. The plaintiffs have presented uncontroverted evidence that defendants have violated their obligations to pay dues checkoffs and to make PAC contributions under the Collective Bargaining Agreements.

The plaintiffs present sufficient evidence to establish that Multi is liable for the costs of the 2000-2001, 2001-2002, and 2002-2004 audits under the terms of the Collective Bargaining Agreements. The plaintiffs' testimony describes the fringe benefit delinquencies revealed by the audits as "substantial", which would trigger the defendants' obligations to pay for the audits. In the absence of evidence from the defendants contesting the award of audit costs, it is a fair inference that the deficiencies revealed by the audits were in fact "substantial" as defined in the Collective Bargaining Agreements.

Pursuant to Section 502(g)(2) of ERISA the plaintiffs, in addition to unpaid fringe benefit contributions, are also entitled to recover interest on those unpaid contributions,

liquidated damages provided for under the plan, and reasonable attorney's fees. 29 U.S.C. § 1132(g)(2). The Collective Bargaining Agreements do not set a rate of interest for unpaid contributions. Therefore, under Section 502(g), interest is calculated at the rate prescribed by 26 U.S.C. § 6621. Id. Section 502(g) also provides for liquidated damages in the amount of the interest on the unpaid contributions where, as is the case here, no liquidated damages are set under the plan. Id. at § 1132(g)(2)(C). Finally, Section 502(g) provides for reasonable attorney's fees and costs incurred in the collection of the unpaid fringe benefit contribution. Id. at § 1132(g)(2)(D).

The award of pre-judgment interest on plaintiffs' claims for unpaid dues checkoffs and PAC Contributions is within this Court's discretion under the LMRA. Cruz v. Local Union No. 3 of Intern. Broth. Of Elec. Workers, 34 F.3d 1148, 1161 (2d Cir. 1994). The plaintiffs have requested pre-judgment interest at 9 per cent per annum, which is the statutory rate under New York law. N.Y. C.P.L.R. § 5004. The defendants have not objected to the award of pre-judgment interest or to the rate. Pre-judgment interest of nine percent per annum is awarded on the plaintiffs' claims for dues checkoffs and PAC contributions.

## Conclusion

There being no just reason for delay, pursuant to Rule 54(b), Fed R. Civ. P., the Clerk of Court shall enter judgment for the Funds against Multi for $167,151.95 for delinquent fringe

11

benefit contributions, $33,250.32 in prejudgment interest on those contributions, for liquidated damages of $33,250.32, for audit costs of $10,993.83, and for reasonable attorney's fees. The Clerk of Court shall enter judgment for Mason Tenders against Multi for $19,406.77 for unremitted dues checkoffs and PAC contributions, and $6,660.42 for prejudgment interest on those payments.

The action against MRI is stayed pursuant to its filing for bankruptcy. The Clerk of Court shall move this action to the Court's suspense docket. Plaintiffs' counsel shall submit a status letter as to MRI's bankruptcy no later than December 14, 2006.

SO ORDERED:

Dated: New York, New York
December 15, 2005

_____
DENISE COTE
United States District Judge